The State, *ex rel.* McPherson, *v.* Beckner *et al.*

No. 14,674.

THE STATE, EX REL. MCPHERSON, *v.* BECKNER ET AL.

REPLEVIN.— *Unlawful Levy by Constable.—Resistance by Householder.— Trespass.*—Where a constable, who had a writ of replevin for a sewing machine, went to the dwelling-house of a third person with whom the defendant in replevin was living, and stated to the householder that he had a writ for the machine of Mrs. S., and the same was pointed out to him, but he went away, without taking possession of it, and he returned in the afternoon of the same day and forced open the outer door of the house, which the householder had partly opened, but which she was endeavoring to close when she ascertained who he was, the constable was guilty of a trespass, which rendered his subsequent acts unlawful, and justified the householder in resisting by force his further progress in serving the writ.

SAME.— *Unlawful Acts of Constable.—Liability of Sureties on His Bond.*—The unlawful conduct of the constable took place in the discharge of his official duties, and not while he was acting merely by color of his office, and the sureties on his bond are liable for injuries sustained by the householder in attempting to prevent him from serving the writ.

SAME.—*Breaking of Outer Door.— What will not Justify.*—The sewing machine being in the house of the relatrix without fraud, the shifting of the machine to another room after the constable's first visit, and the substitution of another machine in its place, would not in any manner authorize the officer to break the outer door, he necessarily being in ignorance of the change, and having the right when once lawfully admitted to break down inner doors in the discharge of his official duties.

LEVY.— *What Constitutes a Valid Levy Upon Personal Property.— When Outer Door May be Broken.*—To constitute a valid levy upon personal property, the act of taking possession must be of such a character as would make the officer, if not protected by the process, liable for trespass. When possession is taken in obedience to a writ, and in its partial execution, the officer may, upon his return to complete his levy, if necessary, break open the outer door.

From the Tippecanoe Circuit Court.

*T. F. Gaylord,* for appellant.

*J. M. Dresser,* for appellees.

MILLER, J.—This was an action brought by the relator against a constable and his surety on his official bond. The cause was tried by a jury and a special verdict returned.

The State, *ex rel.* McPherson, *v.* Beckner *et al.*

Each party made a motion for a judgment upon the verdict. The motion of the appellant was overruled, and that of the appellees was sustained.

The only questions involved in this appeal relate to the ruling upon these motions. The questions presented are :

*First.* Had the officer authority to enter the residence of the relatrix to serve the civil process in his hands under the circumstances disclosed in the verdict of the jury ?

*Second.* If no such authority existed, do the wrongs and injuries complained of afford a right of action on the bond ?

The facts stated in the verdict, so far as we need call attention thereto, are substantially as follows :

The relatrix and her two daughters composed a family of which she was the head, and occupied as a residence a certain dwelling house in the city of Lafayette. Mrs. Mattie C. Smith, one of the daughters, had in her possession in said dwelling a sewing machine. On the 8th day of February, 1883, the Howe Sewing Machine Company brought an action of replevin before a justice of the peace against Mrs. Smith for the possession of said sewing machine, and in the forenoon of that day said justice issued and delivered to the appellee Beckner, as constable, a writ of replevin commanding him to take said sewing machine and to deliver the same to said Howe Sewing Machine Company. Immediately upon receiving said writ said constable called at the residence of the relatrix and was by her admitted into the same. After having been admitted into said dwelling house he stated to the relatrix that he had a writ of replevin for the sewing machine of said Mattie C. Smith, who, although a resident of said dwelling-house, was temporarily absent on said day ; that at said time said sewing machine was, without fraud, in said dwelling-house ; that the relatrix pointed out to him the sewing machine which was then and there in the northeast corner of the sitting room ; that said Beckner did not take possession of said sewing machine, but went away without having done so ; that after said Beckner went away

from the dwelling-house the relatrix took said sewing machine and put the same in a bed-room adjoining the sitting-room on the west, locked the door of the bed-room, and took and placed a sewing machine belonging to her daughter Anna in the place where the sewing machine of said Mattie C. Smith had been when it was pointed out to said Beckner in the morning.

On the afternoon of the same day Beckner, in company with two other persons whom he had engaged to assist him to execute his writ, went to said dwelling-house for the purpose of executing said writ by taking possession of said sewing machine, and with the intention of taking possession of the same, and if necessary carrying it away by force; that said Beckner, upon arriving at said dwelling-house, rang the door bell attached to the front and outer door; the relatrix, upon going to said door, opened it a few inches, when said Beckner, upon said door being so opened, slipped his cane in, and the relatrix thereupon said, "Oh, it is you, is it?" and immediately, and before the said Beckner had entered or partly entered said dwelling-house, attempted, by leaning and pushing against the said door, to close the same, and to keep said Beckner from entering said dwelling; that said Beckner called to his associates to come, and then and there, with the purpose and object of executing his said writ as constable as aforesaid, by obtaining possession of the sewing machine therein called for, and claiming to act under the power and direction of said writ, pushed with great force on said outer door of said dwelling-house, and forced the same open against the will and power of said relatrix, who was thereby thrown back on a bannister near said door and injured. After the officer had gained an entrance into the dwelling, he proceeded to execute the command of his writ, the relatrix resisting him at every step. During the struggle the relatrix received further injuries. This action was brought to recover damages because of such injuries.

It is contended by counsel for the appellant that in view of the facts disclosed by the verdict the constable was acting *virtute officii*, not merely *colore officii*. With this contention we are in accord. The constable had a legal process, and his sole purpose seems to have been the execution of the command which it carried to him. There is some conflict of authority as to whether or not there is a right of action on the bond of a ministerial officer for an unlawful act done *colore officii*. Brandt Sure., section 566; *Commonwealth* v. *Cole*, 46 Am. Dec. 506, and notes. But when the officer is acting *virtute officii*, the authorities all agree that a suit will lie upon his bond. In *Clancy* v. *Kenworthy*, 74 Iowa, 740, the sureties on the bond of a constable were held liable in an action for a breach of an official bond caused by an unlawful arrest made by the officer. In *Cash* v. *People, etc.*, 32 Ill. App. 250, the sureties were held liable for an unlawful assault made by a constable in making an arrest.

It necessarily follows that if the constable in the case under consideration was guilty of unlawful conduct in the discharge of his official duties, to the injury of the relatrix, he and his surety must respond in damages, and the trial court was in error in rendering judgment for the appellee. Upon the other hand, if what the constable did was under the circumstances justifiable, then the court did not err.

The writ under which the officer was acting was but a civil process, and did not authorize him to force the outer door of a dwelling. 2 Freeman Ex., section 236; *Syndacker* v. *Brosse*, 51 Ill. 357; note to *McGee* v. *Givan*, 4 Blackf. 16; *Curtis* v. *Hubbard*, 1 Hill, 336; *Curtis* v. *Hubbard*, 4 Hill, 437.

In actions of replevin a sheriff may, under our statute, section 1271, R. S. 1881, in some cases cause a building or enclosure to be broken open, but no similar statute gives such right to a constable. Except as modified by statute, the common law principle that every man's house is to be

treated as his castle and kept sacred from forcible intrusion, prevails in this State.

The verdict informs us that when the constable went to the dwelling house of the relatrix in the forenoon, he stated to her that he had a writ of replevin for the sewing machine of Mrs. Smith, and the same was pointed out to him, but that he did not take possession of the machine, but went away without having done so; also, that in the afternoon he went to the dwelling-house with his assistants " for the purpose of executing his said writ by taking possession of said sewing machine." It appears that all he did in the forenoon was to ascertain the presence of the sewing machine in the dwelling-house of the relatrix, taking no steps to take the same into his own possession. Mrs. Smith, the owner of the machine, and defendant in the action, not being present, could not have waived any of her rights of possession.

The essential part of a writ of replevin is the command to seize the property; this, therefore, is the first duty of an officer on receiving such a writ. Cobbey Replevin, section 633. "Service on the property means actual seizure. A constructive seizure will not do." Cobbey Replevin section 634.

There is much similarity between taking possession of personal property under a writ of replevin and a levy on the same under a writ of execution. In order to constitute a levy upon personal property, possession must be taken, a mere paper levy will not in general be sufficient. *Standard Oil Co.* v. *Bretz,* 98 Ind. 231; *Dawson* v. *Sparks,* 77 Ind. 88; *Duncan's Appeal,* 37 Pa. St. 500. In order to constitute a valid levy upon personal property, the act of taking possession must be of such a character as would make the officer, if not protected by the process, liable for trespass. *Portis* v. *Parker,* 8 Tex. 23; *Beekman* v. *Lansing,* 3 Wend. 446; *Davidson* v. *Waldron,* 31 Ill. 120 (133); Murfree Sheriffs, section 523.

It seems that on the occasion referred to the officer did

nothing by which the property described in his writ passed into the custody of the law.

We think it clear that if the officer had, in obedience to his writ and in its partial execution, taken possession of the property, he might, upon his return to complete his levy, if necessary, have broken open the outer door. Freeman Ex., section 256.

A distinction has been made in some cases between the right of an officer to break the outer door of a dwelling-house in the service of an ordinary execution, and of a writ which requires him to take possession of a particular thing, such as a writ of replevin, holding that in the latter case he may, after first demanding admittance, break down the outer door. *Keith* v. *Johnson*, 1 Dana, 604 (25 Am. Dec. 167); *Howe* v. *Oyer*, 50 Hun, 559.

In the latter case the officer was proceeding under a statute giving him extraordinary powers where the property had been concealed, somewhat similar to that given a sheriff by our code (section 1271), and is therefore not in point here. The writ of replevin mentioned in *Keith* v. *Johnson*, *supra*, was such as issues after the final ownership of the property had been determined by the judgment of a court, and the owner of the dwelling been commanded to surrender the same to the true owner. The case is not an authority under a procedure such as is provided by our code.

If the officer had no authority to force the outer door of the dwelling-house of the relatrix in the execution of his writ, his conduct as disclosed in the verdict amounted to a trespass.

In *State* v. *Armfield*, 2 Hawks, 246 (11 Am. Dec. 762), Wright, a constable, having a writ of *fi. fa.* against the property of Patterson, went with Armfield to Patterson's house to make the levy. A member of the family, seeing their approach, jumped into the house, and attempted to shut the door to prevent their entrance, but while in the act of shutting the door, and before it was entirely closed, though so

far closed as to require force to open it, Wright pushed against it and entered the house, Armfield being present. The court instructed the jury that if the officer, aided and abetted by the defendant, forced open the door, they were guilty, and the process was no protection to them. In an opinion affirming a judgment of conviction, the court said : " I am of opinion that the charge of the court was correct in this case, and that the defendant was properly convicted. The law is clearly settled that an officer can not justify the breaking open an outward door or window in order to execute process in a civil suit ; if he doth, he is a trespasser. A man's house is deemed his castle, for safety and repose to himself and family ; but the protection and repose would be illusive and imperfect if a man were deprived of the right of shutting his own door when he sees an officer approaching to execute civil process. If the officer can not enter peacefully before the door is shut, he ought not to attempt it, for this unavoidbly endangers a breach of the peace, and is as much a violation of the owner's right as if he had broken the door at first."

We regard this case as a correct enunciation of the law applicable to the question under consideration.

In our opinion the officer in forcing an entrance into the dwelling-house was guilty of a trespass, which rendered his subsequent acts unlawful, and justified the relatrix in resisting his further progress in serving the writ by force. *Curtis* v. *Hubbard*, 4 Hill, 437.

The jury found that the sewing machine of Mrs. Smith was in the dwelling-house of the relatrix, without fraud. We are unable to see how the shifting of the machine to another room and the substitution of another in its place could in any manner authorize the officer to break the outer door, he necessarily being in ignorance of the change, and having the right, when once lawfully admitted, to break down inner doors in the discharge of his official duties.

We regard this case as one in which justice demands that a new trial be awarded rather than a mandate to render judg-

ment for the appellant upon the verdict. *Murdock* v. *Cox*, 118 Ind. 266; *Shoner* v. *Pennsylvania Co.*, 130 Ind. 170. Judgment reversed, with instructions to grant a new trial. Filed Oct. 7, 1892.